WASHINGTON HEALTHCARE CORPO-
RATION, t/a Washington Hospital
Center, et al., Appellants,

v.

Grace Kandee BARROW, et
al., Appellees.

Grace Kandee BARROW, et
al., Appellants,

v.

WASHINGTON HEALTHCARE CORPO-
RATION, t/a Washington Hospital
Center, et al., Appellees.

Nos. 85–689, 85–899.

District of Columbia Court of Appeals.

Argued April 2, 1986.
Decided July 9, 1987.
As Amended Oct. 1, 1987.

John F. Mahoney, Jr., with whom Charles R. Lyons, Washington, D.C., was on brief, for Washington Healthcare Corp.

James E. Joyner, Washington, D.C., for Grace Kandee Barrow and Plummer Barrow.

Mary Ann Snow, with whom Paul D. Krause, David P. Durbin, and John Jude O'Donnell, Washington, D.C., were on brief, for Zakaria M. Oweiss, M.D., P.C.

Roy L. Mason, with whom Douglas M. Scheller, Rockville, Md., was on brief, for Groover, Christie and Merritt, P.C.

Before MACK, BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

The judgment appealed from arises out of the failure to notify a patient of an x-ray report that suggested an early cancerous condition of the lungs and the related failure to treat the developing cancer for almost a year. We reject the appellant hospital's challenge to the sufficiency of the evidence of its liability, but agree with the hospital's contention that it was entitled to a credit as a result of the patient's settlement with her personal physician, and therefore remand for a clarification of the trial court's ruling on that point. We remand also for findings of fact and conclusions of law on the hospital's cross-claim for indemnification from the professional corporation that rendered and forwarded the x-ray report. We affirm the grants of remittitur challenged in the cross-appeal.

I.

Appellees Grace and Plummer Barrow, a married couple, originally brought their medical malpractice claim against Washington Healthcare Corporation, t/a Washington Hospital Center (hereinafter, WHC), Groover, Christie and Merritt, P.C. (hereinafter, GCM), and Zakaria M. Oweiss, M.D., in the United States District Court for the District of Columbia. GCM operated the radiology department at the Washington Hospital Center pursuant to a contract with WHC. Dr. Oweiss was appellee Grace Barrow's personal physician throughout the relevant time period. The gist of the Barrows' complaint was that they were not notified of the fact that a chest x-ray of Grace Barrow taken by GCM on April 4, 1982, disclosed a tiny nodular density in her right lung, until almost a year had passed. By that time, the cancerous nodule had grown to the size of a softball. During the pendency of the action in federal district court, the Barrows settled with Dr. Oweiss for $200,000, and the claim against him was dismissed with prejudice. After dismissal of the remainder of the federal court action without prejudice for reasons not relevant here, the Barrows renewed the medical malpractice action in the Superior Court of the District of Columbia, naming GCM and WHC as defendants. WHC cross-claimed for contribution and indemnification against GCM, and lodged a third-party complaint against Dr. Oweiss for indemnification or for *pro rata* or *pro tanto* credit, by reason of Dr. Oweiss' negligence, against any verdict for plaintiffs.

The trial was structured so that the jury would decide whether WHC and GCM were liable to the Barrows and, if necessary, the trial judge would adjudicate WHC's cross-

claims and third-party complaint. At the conclusion of the Barrows' case, the trial court directed a verdict in favor of GCM, thereby leaving WHC as the sole defendant. The jury, instructed to decide only the narrow question of whether Dr. Oweiss received timely notice of an abnormal x-ray report on appellee Grace Barrow, found that timely notice had not been received. Under the instructions, this resulted in a finding that WHC was liable to plaintiffs. After further deliberations, the jury returned a verdict in favor of appellee Grace Barrow in the amount of $1.8 million, and awarded appellee Plummer Barrow $500,000 for loss of consortium. The trial court later ordered remittiturs reducing the awards to $1.2 million and $250,000, respectively. The trial court summarily denied WHC's post-trial motion for indemnification against GCM and against Dr. Oweiss and for a *pro rata* or *pro tanto* reduction in the judgment to reflect the settlement with Dr. Oweiss.

WHC raises several issues on appeal. As a threshold matter, WHC contends the trial court erred in failing to direct a verdict in its favor on the question of whether Dr. Oweiss received timely notice of the abnormal x-ray report. Even if the trial court correctly submitted this issue to the jury, WHC argues, the trial court should have granted its cross-claim for indemnification against GCM on the basis of language contained in a contract between WHC and GCM. Finally, WHC insists that, in light of Dr. Oweiss' settlement with the Barrows, the trial court erred in denying WHC a *pro rata*, or at least a *pro tanto*, credit against the judgments in favor of the Barrows.

The Barrows cross-appealed in order to challenge the remittiturs. WHC asserts that the cross-appeal was untimely, and that the remittiturs were within the trial court's discretion in any event.

For the reasons set forth below, we affirm in part and remand for further proceedings in accord with this opinion. We affirm the trial court's submission to the jury of the issue of timely notice to Dr. Oweiss, and find the evidence sufficient to sustain the jury's verdict against WHC. While we hold that we have jurisdiction over the cross-appeal, we decline to disturb the trial court's remittiturs. Our review of the record persuades us that WHC is entitled to a *pro tanto* credit against the judgment equal to the amount of Dr. Oweiss' settlement. The record, however, is sufficiently ambiguous regarding whether the trial court's grant of remittitur silently incorporated a *pro tanto* credit to require that we remand this issue for clarification and, if necessary, application of the credit. We affirm the trial court's conclusion that WHC is not entitled to indemnification from Dr. Oweiss because the record will support no other conclusion. Finally, we remand for further proceedings on WHC's cross-claim for indemnification from GCM in order to afford the trial court the opportunity to make findings of fact and conclusions of law.

## II.

■ With respect to WHC's liability for failing to inform Dr. Oweiss in a timely manner of Grace Barrow's abnormal chest x-ray report, we conclude that the trial court properly submitted the issue to the jury, and that the evidence is sufficient to sustain the jury verdict against WHC. At the outset, we note that the Barrows and WHC agree that the applicable standard for sufficiency of the evidence to support a civil verdict is that "the evidence, when viewed most favorably for the plaintiff, indicate[s] a reasonable probability of negligence on the part of the defendant." *Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979).

The jury's role in the trial was confined to determining the narrow question of whether Dr. Oweiss received, on or before May 3, 1982, a copy of the report indicating that the chest x-ray taken of Grace Barrow at WHC on April 4, 1982, was positive. If the Barrows proved that Dr. Oweiss was not so notified, then the jury was to return a verdict against WHC in plaintiffs' favor. WHC acquiesced fully in framing the negligence issue in that fashion. The jury returned a finding that Dr. Oweiss did not

receive such notice of his patient's abnormal chest x-ray.

Although the evidence was not so one-sided as to have precluded a contrary verdict, the Barrows did present adequate evidence to withstand review under the "reasonable probability of negligence" standard enunciated above. Most significant was the testimony of Theresa James, a medical student who worked for Dr. Oweiss until and including April 23, 1982. Ms. James testified that her job entailed combing through Dr. Oweiss' mail and locating abnormal reports, which she brought to Dr. Oweiss' attention. Emphasizing that she had come to know Grace Barrow personally, Ms. James said she would have been upset if she had come across an abnormal report on her. Ms. James specifically denied receiving an abnormal report on Grace Barrow while she worked for Dr. Oweiss, thus accounting for a period extending nineteen days after the x-ray was taken. Further strengthening the plaintiffs' case, Ms. James stated that Dr. Oweiss usually received such x-ray reports within four or five days after the x-rays were taken. This testimony was corroborated by the testimony of Dr. Robert Odenwald of GCM who dictated the report of April 4, 1982, on Mrs. Barrow's chest x-ray. He stated that such reports were usually mailed to the referring physician on the same day they were dictated. Because the jury was free to credit Ms. James' testimony in its entirety, the jury could have determined that the report of the abnormal x-ray did not reach Dr. Oweiss by April 23, 1982, and reasonably could have inferred that if Dr. Oweiss had not received the report by April 23, 1982, he probably did not receive it by May 3, 1982.

In addition to the testimony of Theresa James, plaintiffs introduced other evidence tending to show that Dr. Oweiss did not receive timely notice. The April 4th x-ray report was not included in sequence in the x-ray folder along with the other x-ray reports regarding Grace Barrow taken at WHC in 1982 and 1983. Instead, it was in a separate folder. From this fact, one could infer that the April 4th x-ray report was not processed in the normal manner.

Furthermore, Grace Barrow's testimony to the effect that Dr. Oweiss did not mention the x-ray report to her during a May 3, 1982, office appointment, despite his having the file before him, tends somewhat to corroborate Ms. James' testimony that Dr. Oweiss did not receive the report, although it is susceptible of other inferences as well. The same may be said of the fact that Dr. Oweiss did nothing to follow up on the matter in the ensuing months, and, according to Mr. and Mrs. Barrow, never mentioned the report to them.

There was testimony to the contrary. Most noteworthy was that of Dr. Oweiss himself who testified that he had received the report by May 3, 1982, and told Mrs. Barrow of its contents. Dr. Oweiss, however, was severely impeached and the jury obviously disbelieved him.

Considering the entire record, we conclude that the evidence, when viewed most favorably for the plaintiff, indicated a reasonable probability that WHC was negligent (as the issue was framed, a reasonable probability that Dr. Oweiss had not received the report on or before May 3, 1982), and thus was sufficient for the jury to find for the Barrows. We therefore decline to disturb the jury's verdict as to WHC's liability.

### III.

■ WHC contends that the trial court abused its discretion in extending the time for the Barrows to file cross-appeals from the judgments entered, that the cross-appeals should therefore be deemed to have been filed late, and that this court should not take jurisdiction over the cross-appeals. We detect no abuse of discretion. WHC's counsel conceded at oral argument that WHC did not furnish the Barrows with a copy of its notice of appeal. Moreover, the Clerk's Office of the Superior Court acknowledged that if it sent out a copy of the notice of appeal to the Barrows at all, it did not do so until at least eleven days after WHC filed its notice of appeal. Under the circumstances, the trial court did not abuse its discretion in extending the time for fil-

ing cross-appeals, and we therefore have jurisdiction to consider the merits of the cross-appeals. In the exercise of that jurisdiction, we have reviewed the record and are satisfied that the trial court did not abuse its discretion in ordering the remittiturs.[1] Consequently, we decline to disturb the remittiturs.

### IV.

We turn to the issue of the proper credit to be deducted from the judgments against WHC, by reason of Dr. Oweiss' pretrial settlement for $200,000 of the Barrows' malpractice claim against him. WHC argues that Dr. Oweiss was a settling joint tortfeasor who owed contribution, and therefore *Martelldo v. Hawley*, 112 U.S. App.D.C. 129, 300 F.2d 721 (1962), controls. Under *Martello*, Dr. Oweiss would not actually have to contribute to the payment of the judgment against WHC since he has "bought his peace." *Id.* at 132, 300 F.2d at 724. But if it was established that he was a joint tortfeasor, his settlement would entitle WHC to a fifty percent credit against the judgment it owed appellees. *Id.; see Hall v. Gen. Motors Corp.*, 207 U.S.App. D.C. 350, 359, 647 F.2d 175, 184 (1980) (discussing party's "clear opportunity" to use cross-claim device to prompt judicial determination of whether settling defendant owed contribution).

■ As discussed earlier in this opinion, the trial was structured so that the jury would decide whether WHC was liable to the Barrows. The parties agreed, however, that the trial judge would have the task of adjudicating WHC's cross-claims and third-party complaints.[2] The trial court failed to make any findings with respect to whether Dr. Oweiss was a joint tortfeasor and therefore would have owed contribution if it were not for his settlement with the Barrows. Super.Ct.Civ.R. 52 requires a judge to make findings of fact and conclusions of law "in every action

tried upon the facts without a jury." We emphasize that by virtue of its wide scope, Rule 52 applies to cross-claims and third-party complaints, and must be observed in cases such as this where non-jury contribution or indemnification issues remain following the jury phases of a trial. In the event that the jury findings dispose of all the contested issues of fact that govern the outcome of the non-jury phases of the case, the trial court need only state its conclusions of law.

■ In the absence of trial court findings on the contribution issue, we look to the record ourselves to determine whether the evidence would support a finding that Dr. Oweiss was a joint tortfeasor. We conclude that the record does not contain sufficient evidence of tortious conduct by Dr. Oweiss to support such a finding. Specifically, given the jury verdict that Dr. Oweiss did not receive the abnormal x-ray report by May 3, 1982, and the absence of any evidence bearing on when the report did find its way into Dr. Oweiss' file after that date, it would be sheer speculation to find that Dr. Oweiss did in fact receive the report in time to improve significantly Grace Barrow's prospects in her battle against lung cancer, but failed to alert her to her problem. On the issues of whether Dr. Oweiss was a joint tortfeasor, and whether he owes WHC indemnification, WHC is bound by the jury's finding of fact concerning Dr. Oweiss' non-receipt of the x-ray report by May 3, 1982. WHC had full opportunity and strong motivation to develop the record regarding Dr. Oweiss' role, and did so. At no place in the record, not even in WHC's post-trial motion in which it sought indemnification or a *pro rata* or *pro tanto* credit against Dr. Oweiss, did WHC suggest that there existed evidence that Dr. Oweiss was sent the report between May 3, 1982, and the time that Mrs. Barrow learned that she had cancer. Given the state of the record, we

---

1. See *City Stores Co. v. Gibson*, 263 A.2d 252, 252 (D.C.1970) (per curiam) (motions for remittitur addressed to trial court's discretion).

2. See *Dawson v. Contractors Transport Corp.*, 151 U.S.App.D.C. 401, 402, 408, 467 F.2d 727,

729, 734 (1972) (trial judge empowered to hear and resolve cross-claims for contribution unless legal, as distinguished from equitable, claims underlie cross-claim).

decline to order a remand for further findings on this point.[3] The trial judge could have made no finding other than that Dr. Oweiss was not a joint tortfeasor. Accordingly, WHC is not entitled to a *Martello* fifty percent credit. *See Lamphier v. Washington Hospital Center*, 524 A.2d 729, 733 & n. 5 (D.C.1987).

Our disposition of WHC's claim for a *Martello* credit does not end our inquiry. *Snowden v. D.C. Transit System, Inc.*, 147 U.S.App.D.C. 204, 454 F.2d 1047 (1971), stands for the proposition that "a settlement with one later proven not to have been a tortfeasor also requires a reduction in the judgment against the tortfeasor." *Id.* at 206, 454 F.2d at 1049. A *Snowden* credit is a *pro tanto* reduction in the amount paid by the settling party. *See id.* It follows that, while Dr. Oweiss was not proven to have been a tortfeasor, the $200,-000 he paid the Barrows to settle the malpractice claim against him should have been credited against the judgments entered against WHC. *Cf. Hall, supra,* 207 U.S.App.D.C. at 359, 647 F.2d at 184 (where settling defendant has neither been found liable nor exonerated, *Snowden* credit should be applied).

■■■■ Were we certain that the trial court's remittiturs totaling $850,000 did not silently incorporate a *Snowden* credit, we would simply order that the credit be deducted from the judgments entered. The record, however, leaves some doubt as to whether or not the trial court has already applied the *Snowden* credit without stating that it was doing so. Although the Barrows conceded that WHC was entitled to a *Snowden* credit, but not a *Martello* credit, the trial judge indicated that he denied WHC's motion seeking a credit. Given this uncertainty, we remand this issue for clarification of whether the *Snowden* credit has already been applied. If not, the trial court is directed to apply the *Snowden* credit.

## V.

Having resolved how the amounts of the judgments against WHC should be determined, we turn now to the issue of whether GCM should be required to indemnify WHC. Both WHC and GCM concur that the following sentence, excerpted from an agreement between them (the validity of which neither challenges), is pivotal:

> GCM shall assume legal liability with respect to, arriving [sic] out of or in connection with, all medical services rendered by GCM and their physicians and shall also assume legal liability for injuries or damages arising out of the performance of services by the technical, clerical, or other agents of GCM performing services pursuant to this CONTRACT, unless such liability is caused by the sole neglect of the HOSPITAL, its agents or its employees.

We need to discuss the relevant facts only briefly in order to indicate why we conclude a remand is necessary. Robert Odenwald, M.D., a GCM radiologist, testified that he dictated the April 4, 1982, x-ray report on Grace Barrow. Furthermore, Dr. Odenwald testified that a secretary in the radiology department, which GCM operated, routinely typed such x-ray reports, and that a woman at the front desk in GCM's

---

3. Our conclusion that the record would not sustain a finding that Dr. Oweiss was a joint tortfeasor also precludes a finding that Dr. Oweiss should indemnify WHC. It is patent that on this record, Dr. Oweiss could not be found, as WHC urges, the active tortfeasor and WHC the passive tortfeasor. Consequently, we do not remand for further findings on the indemnification issue either. We add that our comments regarding Super.Ct.Civ.R. 52 apply not only to the matter of contribution but also to the matter of indemnification, on which the trial court also failed to make findings of fact or conclusions of law.

We note that during the presentation of the defense case, the court granted summary judg-ment in favor of Dr. Oweiss on WHC's claim against him for indemnification. Dr. Oweiss had filed the motion before trial. The court granted the motion on the following rationale: If the jury should conclude that Dr. Oweiss had reviewed the report by May 3, 1982, it would return a verdict in favor of WHC and there would be nothing to indemnify; if it should conclude that Dr. Oweiss had not received the report by that date, Dr. Oweiss would not be responsible for the failure to inform Mrs. Barrow and not liable for indemnification. After judgment, WHC filed a motion seeking indemnification from Dr. Oweiss. It was summarily denied.

reception area took care of mailing such reports to referring physicians. There was no testimony regarding the processing or mailing of this particular report. The jury found that the report did not reach Dr. Oweiss by May 3, 1982, and therefore returned a verdict against WHC, the sole defendant by the time the case reached the jury.[4]

Given Dr. Odenwald's testimony to the effect that the preparation and handling of x-ray reports and their mailing to referring physicians were accomplished pursuant to procedures used by GCM, the jury's finding that the report did not reach Dr. Oweiss by May 3, 1982, and the absence of any evidence to suggest that a non-GCM entity or person interfered with the radiology department's mailing of the x-ray report, the record permits the conclusion that GCM was at least partially responsible for the failure to inform Dr. Oweiss in a timely manner, and that the negligence of WHC was not, therefore, the sole cause of the damages suffered by the Barrows.[5]

GCM's appellate brief on the indemnification issue, although seeking affirmance, identifies other possible unresolved factual issues when it points out that WHC's cross-claim for indemnity requires the court to construe the parties' written agreement, and raises questions concerning the intent of the parties in entering it. GCM had raised such issues concerning the construction of the contract in a somewhat abbreviated fashion in its opposition to WHC's post-trial motion for indemnity. In the trial court's rejection of WHC's post-trial motion for indemnification from GCM, it did not address these issues.

Because of the existence of unresolved issues of fact and law, we conclude that the ends of justice will be served best by remanding the case to the trial court for findings of fact and conclusions of law regarding WHC's cross-claim for indemnification against GCM.[6] The remand will afford GCM and WHC the opportunity to seek to augment the record, and to offer whatever additional legal arguments they choose regarding the issues presented in the second, non-jury phase of the original trial.[7]

In sum, we affirm the finding that WHC is liable to the Barrows, affirm the grants of remittitur, affirm the denial of WHC's third-party claim against Dr. Oweiss for indemnity, affirm the denial of a *pro rata* credit against the verdicts for the Barrows, remand for clarification of whether a *pro tanto* credit was included in the remittitur, and remand for findings of fact and conclusions of law with respect to WHC's cross-claim against GCM for indemnity.

4. Following the completion of the plaintiffs' case, the trial court directed a verdict in favor of GCM on the underlying malpractice claim. Plaintiffs did not appeal from this ruling, and its correctness is not before us.

5. The trial judge's grant of a directed verdict in favor of GCM on the Barrows' complaint against GCM at the close of plaintiffs' case does not determine this issue in GCM's favor. WHC is not bound by that ruling because it had not had an opportunity to present evidence when the ruling was made. The appropriate time to offer such evidence would have been during the trial of WHC's cross-claim against GCM. No such trial was held, however, and WHC was left to rely on a post-trial motion to seek this relief. It should be noted that WHC did not ask the court to receive additional evidence in connection with its post-trial motion, although WHC did point out the court's role as factfinder. Nevertheless, because we are without findings of fact or conclusions of law that enable us to review the trial court's ruling, remand is appropriate.

A second compelling reason that the directed verdict in favor of GCM on the Barrows' com-

plaint does not bind WHC on its indemnity claim is that the indemnity claim is based upon contract. The trial court, in granting the directed verdict, was not called upon to consider the provisions of the contract. See discussion below.

6. With respect to the effect upon the further proceedings of the jury's finding, *see Hecht Co. v. District of Columbia*, 139 A.2d 857, 859 (D.C. 1958) (where indemnitor has been given notice of, and opportunity to defend, suit brought against indemnitee, judgment rendered in that suit, as well as the resolution of all issues material to that judgment, conclusive on both parties in subsequent suit for indemnity).

7. We observe that although WHC included a request for contribution in its cross-claim against GCM, it omitted any reference to contribution from its post-trial motion for relief against GCM. Upon remand, WHC should specify whether it has abandoned its request for contribution.

*Affirmed in part and remanded in part for further proceedings consistent with this opinion.*