**DISTRICT OF COLUMBIA, Appellant,**

v.

**Bruce STERLING, Appellee.**

**No. 88–1322.**

District of Columbia Court of Appeals.

Argued June 26, 1990.
Decided Aug. 23, 1990.

---

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Samuel M. Shapiro, Rockville, Md., for appellee.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

On October 25, 1984, Bruce Sterling was sentenced to serve a lengthy prison sentence for the murder of Frank Clinton. On January 25, 1985, he was transferred from the District of Columbia Jail to the Central Correctional Facility at Lorton, Virginia. The following day, he attended a movie at the prison gymnasium. The film was not to his liking, and he decided to leave the gymnasium. On his way out, he was assaulted by several unidentified inmates armed with "shanks." [1] The assault left him paralyzed from the waist down.

In February 1986, Sterling brought suit against the District of Columbia, alleging that the District was negligent and proximately caused his injuries. In March 1988, following a jury trial, Sterling was awarded $954,000 in damages. The District filed a timely appeal from the judgment. We affirm.

On appeal, the District contends that the trial judge erred in removing the issue of Sterling's contributory negligence [2] from the trial before the presentation of evidence began.[3] The principal basis for the claim of contributory negligence was that Sterling had allegedly failed to advise authorities at Lorton of conflicts which he was said to have had with other inmates. The District did not identify the inmates in question either in its answers to interrogatories or in its pretrial statement. During

---

1. Shanks are knife-like stabbing devices which significant numbers of inmates at Lorton are said to have and use. *See District of Columbia v. Bethel,* 567 A.2d 1331, 1332 & n. 1 (D.C.1990).

2. The District had also asserted the defense of "assumption of risk," which it based on the allegation that another inmate, McKinley Arnold, had allegedly warned Sterling not to attend the movie because there might be a contract out on him. The judge correctly ruled that the District had been untimely in disclosing its intention to call Arnold as a witness and in providing the substance of his testimony. Per-

haps for that reason, the District has not pressed the point on appeal. Under these circumstances, we have no occasion to determine if our decision would be the same if there were evidence properly before us that Arnold had warned Sterling that a man with whom Sterling had had a conflict had a contract out on him.

3. There was considerable discussion in the trial court as to whether the correct name for the judge's order was a ruling *"in limine,"* an order granting partial summary judgment, or, as the judge eventually stated, an "order precluding that issue."

the discussion of preliminary matters after the case was called to trial, however, the District disclosed that it was relying on Sterling's failure to report his problems with one Robert Brumfield, who had been incarcerated with Sterling at the D.C. Jail. Brumfield allegedly thought that Sterling might have been responsible for an attack on Brumfield at the Jail, and was also said to be a friend of Frank Clinton, the man whom Sterling had murdered. Brumfield, who was not at Lorton at the time of the assault on Sterling,[4] had allegedly threatened to "get" Sterling before he left D.C. Jail.

The District's theory that Brumfield was responsible for the assault on Sterling was based primarily on interviews with Sterling following the assault, when authorities were attempting unsuccessfully to determine the identities of Sterling's assailants. Sterling had his suspicions, but the District concededly had no evidence that Brumfield was responsible for the crime, directly or indirectly.

The trial judge based his decision precluding the defenses of contributory negligence and assumption of risk on both substantive and procedural grounds. Substantively, he noted that the parties agreed that Sterling's assailants had not been identified. The judge held that the District therefore could not establish that "some inmate with whom the plaintiff had had the conflict had anything to do with the assault," and that any contributory negligence on Sterling's part was therefore not the proximate cause of his injuries. Procedurally, the judge pointed out that the District had never provided responsive answers to Sterling's interrogatories, pro-

pounded two years earlier, or disclosed the substance of Sterling's alleged conflicts with other inmates in its pretrial statement, and that it would be unfair to permit the District to present at trial matters as to which Sterling was given no opportunity to conduct discovery. We agree with the judge on both issues.

■ "To establish the defense of contributory negligence, the burden is upon the defendant to prove by a preponderance of the evidence that the plaintiff was negligent and that such negligence contributed in some degree *as a proximate cause of the injury to the plaintiff."* May v. Washington, Virginia and Maryland Coach Co., Inc., 197 A.2d 267, 268 n. 1 (D.C.1964) (emphasis added), quoting Revised Standardized Jury Instructions For The District Of Columbia, No. 63 (1963).[5] "[T]he rules as to causation are the same for contributory negligence as for negligence, and ... the plaintiff is not barred unless his negligence, of whatever degree, has been a substantial factor in causing his injury." W. Prosser & W. Keeton, The Law Of Torts, § 65, at 456 (1984) (footnotes and citations omitted).

■ Assuming without deciding that Sterling's failure to report a conflict with another prisoner could constitute contributory negligence under the circumstances of this case—and we express no opinion with respect to that question[6]—there was simply nothing in the District's proffer that would have entitled the District to submit the issue of proximate cause to the jury. Counsel for the District acknowledged at oral argument that if the facts in the District's proffer had been presented in a civil

**4.** The District alleged that Sterling had told investigators that Brumfield was a major figure in the drug underworld and a gangster who had the means to arrange a hit on Sterling.

**5.** The current "blue book" instruction states in pertinent part that "[a] plaintiff cannot recover if his negligence is a proximate cause of his injury." Standardized Civil Jury Instructions For The District Of Columbia, No. 5.14 (Rev. ed. 1985).

**6.** A similar question was raised in *Bethel, supra,* 567 A.2d at 1335 & n. 6. We noted that the

District's theory, on the facts there presented, was "not without its problems," *id.,* but we did not decide whether, as a matter of general principle, a defense of contributory negligence based on alleged nondisclosure of a conflict with another prisoner could properly be asserted. *See District of Columbia v. Mitchell,* 533 A.2d 629 (D.C.1987); *id.* at 644 n. 9 (opinion of Ferren, J.); *id.* at 655–56 (opinion of Steadman, J.); *id.* at 656–58 (opinion of Belson, J.); *Doe v. City of Albuquerque,* 96 N.M. 433, 437, 631 P.2d 728, 732 (1981).

suit against Brumfield for wrongful death, Brumfield would have been entitled to a directed verdict.

■ The District contends that Brumfield and his confederates may well have been responsible for the assault because there was no evidence that the deed was done by anyone else, but this tells us no more than the obvious—the perpetrators have not been identified. There being no evidence that Brumfield and those in league with him were implicated, or even any proffer that any associates of Brumfield were incarcerated at Lorton at the time, there could be no showing that Sterling's injuries were a foreseeable consequence of his failure to advise Lorton authorities of his alleged conflict with Brumfield. *See generally Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928); RESTATEMENT (SECOND) OF TORTS § 291 Comment f (1965) (where the harm which in fact results is caused by the intervention of factors or forces which form no part of the recognized risk in the actor's conduct, the actor is ordinarily not liable).[7] Under these circumstances, we agree with Judge Gardner that there was no evidence proffered upon which the District could support a defense of contributory negligence, and that "to let this issue unravel before this jury would serve only to confuse the jury and to threaten a fair trial in this case."

In connection with the procedural basis for his decision, the judge stated, in pertinent part, as follows:

> Of course, a fair trial is a bilateral matter. We have several things here that remove any doubt from the Court's mind, not only that there is no genuine issue here but also that it would be unfair to let the Government stir around in this trial with some of the matters that have been suggested here which are relied upon to support this theory of contributory negligence or assumption of the risk.

Now, this is a matter, as [the Assistant Corporation Counsel] says, this is a matter that should have been explored and dealt with at the pretrial conference because at the pretrial conference there was the same thing, one of the same things that is confronting the Court now. That is to say, an interrogatory asking the Government to set forth the facts upon which it relied to support its theory of defense and the nonexistence of any substantive answer to that question.

Now, just that fact alone probably should have triggered some sort of exploration [or] consideration of this matter. And if at that time there had been the same dearth of supporting factual material that is apparent to the Court at this time, the issue would probably have been extracted at that time.

Now, the pretrial statement sets up the defense, the allegation that the plaintiff was contributorily negligent, assumed the risk of harm, when he failed to alert corrections staff of inmates with whom plaintiff had had conflicts while incarcerated.

Now, that in and of itself is vague enough. That probably should have triggered some critical examination so that we could have a well-defined issue coming into trial. But you talk about inmates, unidentified and unspecified, "with whom plaintiff had conflict; nature of conflict unspecified while incarcerated. Length of incarceration unspecified."

That was back on February 3. I forget when the interrogatories were served. Now, at the trial the plaintiff brings to the trial Court's attention the disparity between this pretrial theory of defense and the state of the record. I don't know whether that was brought to the pretrial judge's attention or not.

But it instantly was apparent to this Court that there was something amiss when we [were] about to go to trial and the defense was about to proceed on

---

7. An "illustration" to the cited comment states as follows:

A gives a loaded pistol to B, a boy of eight, to carry to C. In handing the pistol to C the boy drops it, injuring the bare foot of D, his comrade. The fall discharges the pistol, wounding C. A is subject to liability to C, but not to D.

some issue of contributory negligence, assumption of risk, and we had an interrogatory answer which indicated that the defendant was in possession of no facts to support such an issue.

Now, with the last-minute urgency, the defendant has sought to bring into focus the facts that have heretofore been undisclosed, the facts upon which it purports to base its defense.

These facts are supposed to emanate from some statement some witnesses have said orally here and there, witnesses who appear to have been heretofore mum and are now in the wings prepared to testify, give a testimonial basis to this defense.

The [question] in the interrogatories is still unanswered. These witnesses have been available by definition all the time this suit has been pending.[8]

The judge's remarks speak for themselves. The District did not request a continuance, and it was well within the trial court's discretion not to permit the District to present a defense as to which Sterling had received no meaningful discovery and which it had not adequately identified in its pretrial statement. *See Corley v. BP Oil Corp.*, 402 A.2d 1258, 1261–62 (D.C.1979) (judge may properly limit testimony of witness to subjects disclosed in calling party's answers to interrogatories, because contrary ruling would thwart the primary purpose of liberalized discovery rules—prevention of surprise at trial—and deny opposing party adequate opportunity to conduct informed cross-examination based on trial preparation); *Redding v. Capitol Cab Co.*, 284 A.2d 54 (D.C.1971) (pretrial procedure contemplates that fair disclosure be made in pretrial statements in order to avoid surprise).[9]

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*

---

8. In his original ruling that the issues of contributory negligence and assumption of risk should be taken out of the case, the judge relied solely on the lack of proof of causation. Five days later, the District having moved for reconsideration, the judge added the procedural ruling which we have quoted in the text.

9. This is not a case where sanctions were imposed for failure to make discovery without a prior motion to compel discovery. *Cf. Henneke v. Sommer*, 431 A.2d 6, 7–8 (D.C.1981) (exclusion of evidence improper where motion for sanctions was withdrawn). Rather, the court was restricting the evidence at trial to that which was disclosed by the District in its answers to interrogatories, and thus avoiding unfairness and surprise. *See Corley, supra*, 402 A.2d at 1262.